IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CITIGROUP INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:14-cv-855-AJT-TRJ |
| ) | |
| CITITHANKYOU.COM, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## REPORT AND RECOMMENDATION

This matter is before the court on plaintiff Citigroup Inc.'s motion for default judgment (no. 14) against the following four defendant domain names: <citibankthankyourewards.com>, <citithankyou.com>, <citicardthankyou.com>, and <thankyoucitibank.com> (collectively, "defendant domain names"). Plaintiff seeks *in rem* injunctive relief in the form of a transfer of the four defendant domain names into the ownership and control of Citigroup Inc. *See* Compl., No. 1.

On July 9, 2014, plaintiff filed a complaint alleging that defendant domain names are involved in unlawful cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Plaintiff sent copies of the complaint by email and Federal Express to the registrants of the defendant domain names pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa). Molster Aff. ¶ 2, No. 17.

On July 22, 2014, plaintiff filed a motion for an order allowing service by publication, which this court granted on July 23, 2014. Nos. 6, 8. Pursuant to the July 23 order and 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb), plaintiff was required to publish a copy of the order in *The*

*Washington Post* once within fourteen (14) days of its entry. The order stated that any answer or response to the complaint was due within twenty (20) days of the date of publication in *The Washington Post*. Accordingly, on July 28, 2014, plaintiff timely published notice of this action in *The Washington Post*. Molster Aff. Ex. 1, No. 9-1. To date, no answer or other pleading has been filed in response to the complaint and the time to do so has expired. On October 6, 2014, the Clerk entered default. No. 16. Upon consideration of plaintiff's motion and the memorandum in support thereof, the magistrate judge makes findings as follows and recommends that default judgment be entered in plaintiff's favor against the four defendant domain names.

## Fact Summary

The following facts are established by the complaint and by plaintiff's affidavit in support of default judgment.

Plaintiff is a leading provider of financial services in the United States and throughout the world. Compl. ¶ 1. Plaintiff also offers credit cards that are referred to as the "Citi Thank You Preferred Card" and the "Citi Thank You Premier Card" and promotes these credit cards on its website. Compl. ¶ 15, Ex. 9. Plaintiff operates its internet banking and other financial services through the domain names <citi.com>, <citibank.com>, <citibankonline.com>, and <citicards.com>. Compl. ¶ 1.

Plaintiff owns federally registered trademarks and service marks CITI,[1] CITIBANK,[2] and CITI THANKYOU[3] (collectively, the "CITI Marks") in addition to an extensive family of marks

---

[1] The CITI mark, Reg. No. 1,181,467, was registered on December 8, 1981, for "Financial Services-Namely, Extending Consumer and Industrial Loans to Others; Credit Card Servicing and the Purchasing and Servicing of Consumer Receivables Associated Therewith; Commercial Lending; Servicing Loans and Extensions of Credit; Real Estate Lending; Mortgage Financing and Mortgage Servicing; Investment Advisory and Financial Advisory Services." Compl. ¶ 11, Ex. 5. Plaintiff's rights in the mark have become incontestable pursuant to 15 U.S.C. § 1065. Compl. 11.

2

composed of or featuring the CITI Marks. Compl. ¶¶ 1, 10-13. Plaintiff uses the CITI THANKYOU mark to promote its credit card services and its consumer rewards program associated with its banking and consumer credit services. Compl. ¶ 14. Plaintiff operates, advertises and promotes its rewards program through its top-level registered domain name <thankyou.com>. Compl. ¶ 14, Ex. 8. Prior to the acts challenged under this action, plaintiff spent substantial sums advertising the CITI Marks. Compl. ¶ 1. Plaintiff has made extensive use of the CITI Marks by registering them and providing its services in approximately 200 countries throughout the world. Compl. ¶¶ 16-18. As a result, the CITI Marks represent to the worldwide consuming public plaintiff's goods and services. Compl. ¶ 17.

Plaintiff alleges that defendant domain names unlawfully and without permission incorporate its registered CITI Marks. Compl. ¶¶ 5, 20. Each of the defendant domain names consists of the element "CITI," "CITIBANK," or "CITI THANKYOU" coupled with the elements "CARD" or "THANKYOU" or "REWARDS." Compl. ¶ 20. Plaintiff asserts that the defendant domain names are confusingly similar to and violate its exclusive trademark and service mark rights in the CITI Marks. Compl. ¶ 20.

The defendant domain names are registered to and maintained by one or more anonymous foreign registrants under foreign addresses through domain registrars located in China and Panama. Compl. ¶¶ 2, 5, Exs. 1-4.[4] Subsequent to plaintiff's registration of the CITI

---

[2] The CITIBANK mark, Reg. No. 691,815, was registered on January 19, 1960, for "banking services." Compl. ¶ 12; Ex. 6. Plaintiff's rights in the mark have become incontestable pursuant to 15 U.S.C. § 1065. Compl. ¶ 12.

[3] The CITI THANKYOU mark, Reg. No. 3,956,034, was registered on May 3, 2011, for "promoting the goods and services of others through the administration of incentive reward and redemption programs by distributing rewards for credit and debit card use, and for banking and wealth management customer loyalty." Compl. ¶ 13; Ex. 7.

[4] According to the defendant domain names' WHOIS registration records, the registrants are listed as private or under various privacy services. Compl. ¶ 5, Exs. 1-4.

3

Marks and without consent, the registrants registered or acquired the defendant domain names. Compl. ¶ 19.

All of the defendant domain names redirect consumers to websites that advertise and promote products and services that compete with plaintiff's products and services. Compl. ¶ 21. Each of the websites also mimics plaintiff's rewards program website in a manner that is likely to deceive consumers. Compl. ¶ 21, Exs. 10-13. For example, the website linked to the domain name <citibankthankyourewards.com> purports to allow consumers to access their "Citi Thankyou Rewards," or to "Redeem Reward Points," which are prominent features of plaintiffs rewards program website. Compl. ¶ 21, Ex. 10. Upon information and belief, plaintiff alleges that the registrants of the defendant domain names receive a financial benefit each time an internet user accesses the websites affiliated with the defendant domain names. Compl. ¶ 22. The content appearing at these websites is beyond plaintiff's control and is likely to cause confusion among consumers. Compl. ¶ 23.

Plaintiff alleges that the registrants of these domain names have a bad faith intent to profit from their unauthorized use of the CITI Marks by diverting consumers from plaintiff's authorized websites to sites accessible under the defendant domain names, thereby harming the goodwill represented by plaintiff's CITI Marks for commercial gain and creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the sites. Compl. ¶ 26. Upon information and belief, the registrants have no trademark or other intellectual property rights in the defendant domain names and the defendant domain names do not consist of the legal name of the registrants or a name that is otherwise commonly used to identify the registrants. Compl. ¶ 27. Upon information and belief, the registrants have made no prior use of the defendant domain names in connection with the bona fide offering of any goods or services.

4

Compl. ¶ 27. Plaintiff has suffered, and continues to suffer, irreparable harm to its reputation and goodwill as a result of the registration and ongoing use of the defendant domain names. Compl. ¶ 29.

To date, neither the registrants nor any other potential interested party has responded to this lawsuit. Therefore, plaintiff request the court order VeriSign, Inc., to transfer the domain names from their current registrar accounts to CSC Corporate Domains, Inc. ("CSC") and CSC to register the defendant domain names in the name of plaintiff, Citigroup Inc. Compl. ¶ i.

## Jurisdiction and Venue

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"). There is *in rem* jurisdiction over the defendant domain names pursuant to 15 U.S.C. § 1125(d)(2)(A), as the defendant domain names violate plaintiff's trademarks and service marks and plaintiff cannot obtain personal jurisdiction over the registrants, each of whom appears to be located outside of the United States and does not appear to have sufficient contacts to confer jurisdiction. Venue is proper pursuant to 15 U.S.C. § 1125(d)(2)(A) and (C) because the registry for the defendant domain names, VeriSign, Inc., is located within this court's judicial district. And, as described above, plaintiff has properly perfected service by complying with all of the requirements set forth in 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb).

## Standard

Default judgment is appropriate if the well-pled allegations of the complaint establish plaintiff's entitlement to relief and a defendant—or, here, the registrant of a defendant domain name—has failed to plead or defend within the time frames contained in the rules. *Music City Music v. Alfa Foods, Ltd.,* 616 F. Supp.1001, 1002 (E.D. Va. 1985); Fed. R. Civ. P. 55. By

5

defaulting, a defendant or registrant admits plaintiff's well-pled allegations of fact, which then provide the basis for judgment. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). *See also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing *Ryan*); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting factual allegations in complaint); *Marion County Court v. Ridge*, 13 F.2d 969, 971 (4th Cir. 1926) (default admits well-pled facts). Because these registrants have defaulted, the facts set forth in plaintiff's complaint are deemed admitted.

## Discussion and Findings

The magistrate judge finds that plaintiff's well-pled factual allegations establish that defendant domain names were unlawfully involved in cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act 15 U.S.C. § 1125(d)(1)(A). Accordingly, the magistrate judge finds that plaintiff is entitled to the sole relief requested, the transfer of defendant domain names to plaintiff.

In order to establish an anticybersquatting violation, the owner of a protected mark must allege that the individual "(i) has a bad faith intent to profit from that mark . . . ; and (ii) registers, traffics in, or uses a domain name that— (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A); *see Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264 (4th Cir. 2001). Therefore, the court should apply this two prong test to the facts presented to determine whether the defendant domain names violate plaintiff's rights under the ACPA.

As a preliminary matter, plaintiff is the owner of protected, distinctive marks. The registration of the CITI Marks constitutes *prima facie* evidence of their validity and plaintiff's

6

ownership. 15 U.S.C. § 1057(b). It is also *prima facie* evidence that the marks are descriptive and have acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Further, plaintiff has used the CITI trademark continuously in interstate commerce in connection with its goods and services since at least 1981, the CITIBANK mark since 1960, and the CITI THANKYOU mark since 2011. Plaintiff has spent substantial sums advertising these CITI Marks, which have become well-known among members of the purchasing public as an indicator of the goods offered by plaintiff,.

Further, the defendant domain names are confusingly similar to plaintiff's distinctive CITI Marks. All of defendant domain names incorporate an element of the CITI Marks combined with words associated with plaintiff's online banking and financial services. These generic words, "thankyou," "rewards," and "card," fail to distinguish the defendant domain names from the registered marks. *See Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008). In fact, the addition of these terms increases the consumer confusion caused by the defendant domain names' similarity to the CITI Marks. For these reasons, the undersigned magistrate judge recommends a finding that the defendant domain names are confusingly similar to plaintiff's distinctive CITI Marks.

As to the remaining factor, whether the defendant domain names were registered with a "bad faith intent to profit" from the CITI Marks, courts consider a non-exhaustive list of nine factors pursuant to 15 U.S.C. § 1125(d)(1)(B)(i). *See Venetian Casino Resort, LLC v. Venetiangold.Com*, 380 F. Supp. 2d 737, 740 (E.D. Va. 2005). The relevant portion of the statute reads as follows:

> A court may consider factors such as, but not limited to–
> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; . . . and
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). For at least the following reasons, the magistrate judge recommends a finding that the defendant domain names were registered with bad faith intent to profit from the CITI Marks.

First, plaintiff has exclusive rights in the CITI Marks and the registrants of the confusingly similar domain names have no trademark or other intellectual property rights in the defendant domain names, which also do not appear to consist of the legal name of the registrants or a name that is otherwise commonly used to identify the registrants. Second, the registrants of the defendant domain names have no bona fide interest in registering a domain confusingly

8

similar to plaintiff's marks. Third, the domain names direct customers to plaintiff's competitors through webpages confusingly similar to those used by plaintiff. This creates a significant likelihood of confusion regarding a potential association or endorsement between defendant domain names and plaintiff's company. Given the widespread fame of plaintiff's CITI Marks, and the lack of bona fide interest by the registrants of the defendant domain names, it is plain that the defendant domain names were registered with the intent to divert plaintiff's customers and other internet users to the defendant domain names' websites. For these reasons, the magistrate judge recommends a finding that the registrants and entities operating the defendant domain names have indeed acted with a bad-faith intent to profit from Citigroup Inc.'s reputation and brand recognition without Citigroup Inc's authorization.

Based on the foregoing, the magistrate judge finds that the requisite standards are satisfied and defendant domain names violate plaintiff's rights under the ACPA. In an *in rem* cybersquatting action, plaintiff's remedies are limited to either the transfer of the domain name to the owner of the mark or the forfeiture or cancellation of the domain names. 15 U.S.C. § 1124(d)(2)(D)(i); *see Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610 (E.D.Va. 2003) (discussing a court's power to transfer or cancel a domain when the location of the registry is within that judicial district). Here, the domain names' registry, VeriSign, Inc., is located within this judicial district and plaintiff has properly perfected service under the ACPA. Accordingly, the magistrate judge finds that plaintiff is entitled to the transfer of the defendant domain names into the exclusive ownership and control of Citigroup Inc.

## Recommendation

The magistrate judge recommends that default judgment be entered against defendant domain names in favor of plaintiff Citigroup Inc., and that ownership and control of defendant domain names be transferred to plaintiff.

## Notice

Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

December 12, 2014
Alexandria, Virginia